WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Eloy A. Peral (eperal@windelsmarx.com)

*Attorneys for Northeast Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:

13 ADAMS STREET LLC,

                          Debtor.
------------------------------------------------------------x
In re:

N.C. 17-19 ADAMS STREET LLC,

                          Debtor.
------------------------------------------------------------x

Chapter 11

Case No. 24-23096-shl


Chapter 11

Case No. 24-23097-shl

**NOTICE OF FILING OF MODIFIED PLAN**

      **PLEASE TAKE NOTICE**, that on April 17, 2026, Northeast Bank ("**Northeast**"), secured creditor of the above-captioned debtors and debtors in possession filed *Northeast Bank's Plan of Liquidation for Debtors 13 Adams Street LLC and N.C. 17-19 Adams Street LLC* [ECF No. 60] (the "**Original Plan**").

      **PLEASE TAKE FURTHER NOTICE**, that Northeast hereby files its *Modified Plan of Liquidation for Debtors 13 Adams Street LLC and N.C. 17-19 Adams Street LLC* attached hereto as **Exhibit A** and a redline against Original Plan is attached as **Exhibit B**.

      **PLEASE TAKE FURTHER NOTICE**, that Northeast reserves the right to further modify or amend the Modified Plan.

1

Dated: New York, New York
        May 4, 2026

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Northeast Bank*


By:     */s/ Eloy A. Peral*_____
        Eloy A. Peral
        156 West 56th Street
        New York, New York 10019
        Tel. (212) 237-1000 / Fax. (212) 262-1215
        Email: eperal@windelsmarx.com

**EXHIBIT A**
**(Modified Plan)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:

13 ADAMS STREET LLC,

                      Debtor.
------------------------------------------------------------x
In re:

N.C. 17-19 ADAMS STREET LLC,

                      Debtor.
------------------------------------------------------------x

Chapter 11

Case No. 24-23096-shl

Chapter 11

Case No. 24-23097-shl

### NORTHEAST BANK'S MODIFIED PLAN OF LIQUIDATION FOR DEBTORS 13 ADAMS STREET LLC AND N.C. 17-19 ADAMS STREET LLC

**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Eloy A. Peral (eperal@windelsmarx.com)

*Counsel for Northeast Bank*

Dated: May 4, 2026

1

Secured creditor Northeast Bank ("Northeast") hereby proposes this plan of liquidation under chapter 11 of the Bankruptcy Code for the above-captioned debtors and debtors-in-possession 13 Adams Street LLC (the "13 Adams Debtor") and N.C. 17-19 Adams Street LLC (the "NC Adams Debtor," together with 13 Adams, as "Debtors"). Capitalized terms used in this Plan shall have the respective meanings set forth in Article I below, or as such terms may be defined elsewhere in the Plan. Northeast is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

**Northeast reserves the right to alter, amend or modify this Plan up to and through its substantial consummation.**

### SUMMARY OF PLAN AND FACTUAL BACKGROUND

The Debtors are single asset real estate debtors within the meaning of Section 101(51B) of the Bankruptcy Code that own buildings on adjacent lots in Westchester County, New York. The 13 Adams Debtor owns the real property located at 13 Adams Street, Bedford Hills, New York 10507 (Section 60.14, Block 5, Lot 4) ("13 Adams Street") and the NC Adams Debtor owns the real property located at NC 17-19 Adams Street, Bedford Hills, New York 10507 (Section 60.14, Block 5, Lot 5) ("NC Adams Street," together with 13 Adams Street, the "Adams Properties"). 13 Adams Street has three floors and approximately three units and NC Adams Street has two floors and approximately four units.

The indebtedness due to Northeast under the Loan, which matured on October 24, 2024, is secured by, *inter alia*, the Adams Properties and totaled no less than $2,958,191.76 on the Petition Date. On October 24, 2024, Northeast filed a *Verified Complaint in Foreclosure* (Index No.: 74185/2024) with the Supreme Court of the State of New York, County of Westchester against, *inter alia*, the Debtors and Guarantor seeking, among other relief, a foreclosure sale of the Adams Properties and to recover the indebtedness due under the Loan. The Guarantor, Nuo Camaj, holds 100 percent of the membership interests in the Debtors. The Debtors filed their Chapter 11 petitions on December 17, 2024.

During and after the Broker Listing Period, which expired on July 7, 2025, the Debtors received various bids to acquire one or both of the Adams Properties, including credit bids from Northeast. None of these bids materialized into a written agreement. A significant hurdle to consummating any sale is the uncooperativeness of the Guarantor. The Guarantor resides on the third floor of 13 Adams Street and operates a restaurant, Nino's Restaurant, from the first floor. Many of the offers made were conditioned on new lease agreements with the Guarantor and Nino's Restaurant and/or NC Adams Street being delivered vacant. However, the Guarantor has indicated a refusal to cooperate in any sale. In addition, an inspection by Northeast of the Adams Properties revealed that unauthorized tenants which were previously unknown to Northeast appear to be in possession of portions of both Adams Properties.

In light of the Guarantor's refusal to cooperate with bidders, his patently conflicted interests and the prolonged and unsuccessful marketing process, Northeast proposes this Plan to facilitate an end to the Chapter 11 cases. Under the Plan, a Plan Administrator will be appointed to, *inter alia*, consummate a sale of the Adams Properties to Northeast pursuant to the Northeast Credit Bids subject

2

to the potential for an Alternative Transaction. The Plan offers the Guarantor and Nino's Restaurant an incentive in the form of a reduction of the Northeast Guaranty Claim to surrender their possession of 13 Adams Street premises to the Plan Administrator or to reach a different resolution with the Plan Administrator and Northeast.

Other than the proofs of claim filed by Northeast, there are no filed or scheduled Claims against the Debtors. Thus, only Northeast would be entitled to vote on the Plan under Section 1126(a) of the Bankruptcy Code. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the following Classes and are treated separately: Class 1 – Northeast Secured Claim, Class 2 – General Unsecured Claims (Northeast Deficiency Claim), and Class 3 – Equity Interests. Northeast consents to Class 1 and Class 2 being deemed to vote in favor of the Plan and Class 3 is unimpaired and is not entitled to accept or reject the Plan. As no Classes are entitled to vote on the Plan, no disclosure statement is needed to accompany the Plan. In addition, the Plan can be confirmed on a consensual basis pursuant to Section 1129(a).

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

## ARTICLE I
### Definitions

For the purposes of this Plan the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1. "***13 Adams Street***" shall have the meaning set forth in the Plan Summary and Factual Background.

2. "***17-19 Adams Street***" shall have the meaning set forth in the Plan Summary and Factual Background.

3. "***Adams Properties***" shall have the meaning set forth in the Plan Summary and Factual Background.

4. "***Adequate Protection Payments***" means the monthly payment in the amount of $4,000 due to Northeast by the 13 Adams Debtor under paragraph four of the Cash Collateral Order.

5. "***Administrative Claims Bar Date***" means the date which is thirty (30) days after a notice of the Effective Date is filed on the case dockets.

6. "***Administrative Claim Cash Reserve***" means $20,000.00 in Cash that shall be funded by the Plan Proponent to the extent Northeast acquires the Adams Properties or funded with the proceeds of an Alternative Transaction and allocated and reserved for the Plan

3

Administrator to fund distributions to holders of Administrative Expenses Claims, including Professional Fee Claims.

7.      "*Administrative Expense Claim*" means a Claim for the costs and expenses of administering these Chapter 11 cases allowed under Sections 503(b) or 330(a) of the Bankruptcy Code and that are entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including Professional Fee Claims but only to the extent allowed and awarded by the Bankruptcy Court.

8.      "*Allowed Claim*" means (1) a Claim timely filed before the applicable bar date and (a) as to which no objection has been filed within the time fixed in the Plan or (b) as to which any objection that is filed (including an objection set forth in this Plan) has been subsequently settled, waived, withdrawn or denied by the Bankruptcy Court, (2) a Claim in the amount listed on the Bankruptcy Schedules and not designated as contingent, unliquidated or disputed, as to which no objection has been filed or (3) a Claim allowed pursuant to an order of the Bankruptcy Court.

9.      "*Alternative Transaction*" shall have the meaning set forth in Article III.2 of the Plan.

10.      "*Avoidance Actions*" means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

11.      "*Bankruptcy Code*" means the United State Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time and applicable to this case.

12.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York or any other court exercising jurisdiction in this case.

13.      "*Bankruptcy Rules*" mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, as now in effect or hereinafter amended.

14.      "*Broker Listing Period*" means March 13, 2025 through and including July 7, 2025, the term of the Exclusive Right to Sell and Listing Agreements under which the Pre-Confirmation Broker was retained by the Debtors, as modified by the Broker Retention Orders.

15.      "*Broker Retention Orders*" means the orders entered by the Bankruptcy Court on March 24, 2025 [ECF No. 31] and April 15, 2025 [ECF No. 42] approving the proposed retention of the Pre-Confirmation Broker, as modified.

16.      "*Cash*" means cash or cash equivalent (a) of the Estates or (b) the Liquidating Debtors on hand as of the Effective Date.

17.     "*Cash Collateral Order*" means the *Final Order (I) Authorizing The Use Of Cash Collateral (II) Providing Adequate Protection And (III) Granting Related And Related* entered by the Bankruptcy Court on August 18, 2025 in the case of the 13 Adams Debtor [ECF No 48].

18.     "*Cause of Action*" means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, including, but not limited to (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) any Avoidance Action; (c) any claim against a current or former tenant or licensee of the Adams Properties for unpaid rent; (d) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim; and subject, however, to any releases provided in this Plan, the Confirmation Order, or any other Final Order of the Bankruptcy Court.

19.     "*Claim*" means a right to payment as set forth in Section 101(5) of the Bankruptcy Code.

20.     "*Class*" means a category of substantially similar Allowed Claims.

21.     "*Confirmation*" means approval of this Plan by the Confirmation Order of the Bankruptcy Court following a hearing and notice thereof in accordance with the Bankruptcy Code and Bankruptcy Rules.

22.     "*Confirmation Date*" means the date of entry of the Confirmation Order.

23.     "*Confirmation Hearing Date*" means the date set by the Bankruptcy Court for the hearing on Confirmation of the Plan.

24.     "*Confirmation Order*" means the order of the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code confirming the Plan.

25.     "*Credit Bid Sale*" means a sale of one or both of the Adams Properties to Northeast pursuant to the Northeast Credit Bid.

26.     "*Debtors*" shall have the meaning set forth in the introductory paragraph to the Plan.

27.     "*Disputed Claim*" means: (a) any Claim that is listed in the Debtors' Bankruptcy Schedules as being disputed, contingent or unliquidated with respect to which no Proof of Claim has been timely filed; and (b) any filed Claim with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period fixed by the Bankruptcy Court and such Claim has not become an Allowed Claim.

28.     "*Effective Date*" means the date upon which all conditions set forth in Article III.11 are met.

29.     "*Entity*" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

30.     "*Equity Interest*" means direct membership interests in the Debtors.

31.     "*Equity Interest Holder*" means Nuo Camaj, the sole member of each of the Debtors.

32.     "*Estate(s)*" means the estates of the Debtors created under section 541 of the Bankruptcy Code.

33.     "*Executory Contract*" means a contract to which s Debtor is a party and that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

34.     "*Final Order*" means an order of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek *certiorari*, review or rehearing has been waived or (b) the time to appeal or seek *certiorari*, review or rehearing has expired and as to which no appeal or petition for *certiorari*, review or rehearing is pending.

35.     "*Guarantor*" means Nuo Camaj in his capacity as guarantor pursuant to that certain *Guaranty of Payment* dated May 25, 2022 under which he personally guaranteed to Northeast, *inter alia*, the Debtors' obligations to Northeast under the Loan Documents.

36.     "*General Bar Date*" means March 6, 2025, the deadline by which proofs of Claim arising prior to the Petition Date, were required to be filed with the Clerk of the Bankruptcy Court in these Chapter 11 case.

37.     "*General Unsecured Claim*" means a Claim that is not a Secured Claim, Administrative Expense Claim, Priority Claim, or Priority Tax Claim.

38.     "*Guarantor Residence*" means that portion of the third floor of 13 Adams Street in which the Guarantor maintains a residence.

39.     "*Impaired*" means impairment of a class of Claims under Section 1124 of the Bankruptcy Code.

40.     "*Lien*" has the same meaning as set forth in section 101(10) of the Bankruptcy Code. All rules of construction contained in Section 102 of the Bankruptcy Code apply in the construction of the Plan.

41.     "*Liquidating Debtors*" means the Debtors after the Effective Date.

42.    "*Loan*" means the loan in the original principal amount of Two Million Four Hundred Thousand Dollars ($2,400,000.00) that Northeast made to the Debtors on or about May 25, 2022.

43.    "*Loan Documents*" means all agreements, documents, and instruments that evidence, memorialize, or otherwise provide security for the Loan as described in the proofs of claim filed against the Debtors on February 7, 2025.

44.    "*Northeast Administrative Expense Claim*" means the post-petition real estate taxes due by the Debtors and satisfied by Northeast which as of December 31, 2025 equaled $16,044.26 for 13 Adams Street and $16,231.18 for NC Adams Street.

45.    **"*Northeast Credit Bids*"** means the credit bid of Northeast to purchase 13 Adams Street for a purchase price in the amount $1,200,000.00 and to purchase NC Adams Street for a purchase price of $900,000.00, or any other higher purchase price Northeast may offer for either Adams Properties.

46.    **"*Northeast Deficiency Claim*"** means that portion of the Allowed Northeast Secured Claim which exceeds the value of the assets securing such Allowed Claim.

47.    "*Northeast Guaranty Claim*" means the claim(s) of Northeast against the Guarantor pursuant to that certain *Guaranty of Payment* dated May 25, 2022 under which he personally guaranteed to Northeast, *inter alia*, the Debtors' monetary obligations to Northeast under the Loan Documents.

48.    "*Northeast Secured Claim*" means the Secured Claim held by Northeast.

49.    "*Petition Date*" means December 17, 2024, the date on which each Debtor filed its voluntary Chapter 11 petition.

50.    "*Plan*" means this Chapter 11 plan of liquidation filed by Northeast.

51.    "*Plan Administrator*" means the person or entity appointed to administer the Plan upon Confirmation, as more fully identified in the Plan Administrator Agreement.

52.    "*Plan Administrator Agreement*" means the agreement appointing and governing the Plan Administrator, which will be filed in a Plan Supplement.

53.    "*Plan Proponent*" means Northeast.

54.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, whereby the Plan Proponent will disclose the identity of the Plan Administrator, file the Plan Administrator Agreement and Surrender Agreement.

55.    "*Pre-Confirmation Broker*" means Joseph Lukic of Compass Greater NY, LLC whose retention by the Debtors as broker for the Adams Properties was approved in accordance with the Broker Retention Orders.

56.    "*Priority Claim*" means all Claims that are entitled to priority pursuant to Bankruptcy Code Section 507(a) with the exception of Administrative Expense Claims and Priority Tax Claims.

57.    "*Priority Tax Claim*" means all Claims that are entitled to priority pursuant to Bankruptcy Code Sections 502(i) and 507(a)(8).

58.    "*Professional*" shall mean those persons: (a) retained by the Debtors pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy  Code providing for compensation for services rendered prior to the Confirmation Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which  compensation has been Allowed by the Bankruptcy Court pursuant to sections 503(b)(2), (4) or 506(c) of the Bankruptcy Code.

59.    "*Professional Fee Claims*" means all Claims for fees and expenses (including transaction and success fees) incurred by a Professional on or after the Petition Date and before or on the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

60.    "*Pro Rata*" means with respect to a Class member, in the same proportion as the amount of such member's Allowed Claim over the total Allowed Claims in such Class.

61.    "*Restaurant Tenant*" means Nino's Restaurant of Bedford, Inc. and/or any other Entity that operates the restaurant doing business as "Nino's Restaurant" at 13 Adams Street.

62.    "*Restaurant Premises*" means the portion of 1st floor of 13 Adams Street where the Restaurant Tenant is located.

63.    "*Schedules*" means the schedules of assets and liabilities, lists and statements of financial affairs, together with all amendments thereto, filed by the Debtor pursuant to Bankruptcy Rule 1007.

64.    "*Secured Claim*" means a Claim secured by a Lien (including a judgment lien, mortgage or security interest) on property of the Debtors' Estates to the extent of the value of the property of the Debtors' Estates securing such Claim, and any valid and enforceable right of setoff under Section 506 and 553 of the Bankruptcy Code, respectively.

65.    "*Surrender Agreement*" means an agreement between the Plan Administrator on behalf of the Debtors and a tenant or occupant of the Adams Properties wherein the tenant or occupant agrees to, *inter alia*, surrender and deliver vacant occupancy of the premises to the Debtors, (ii) leave the premises in broom clean condition, and (iii) return all keys to the Debtors. A copy of the Surrender Agreement is to be included in a Plan Supplement.

66.     "*Unexpired Lease*" means a lease to which a Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

67.     "*U.S. Trustee Fees*" means all fees payable pursuant to 28 U.S.C. § 1930, and statutory interest thereon.

## ARTICLE II
### Classification And Treatment of Claims and Interests

1.     **Unclassified Claims and U.S. Trustee Fees**. Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims or Priority Tax Claims, or U.S. Trustee Fees, which shall be afforded the following treatment:

(a)     **Administrative Claims and Professional Fee Claims**. The Plan Proponent is unaware of any Administrative Expenses Claims existing as of the Confirmation Date, except the Northeast Administrative Expense Claim and Professional Fee Claims. All final requests for payment of Administrative Expense Claims, including Professional Fee Claims, must be filed no later than the Administrative Claims Bar Date (which is 30 days after entry of the Effective Date). Except to the extent that a holder of an Allowed Administrative Expense Claim, including holders of Professional Fee Claims, agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Claim, a distribution in Cash from the Administrative Claim Cash Reserve; *provided, however*, that Guarantor shall be liable for the payment of all Allowed Administrative Expenses Claims to the extent the Administrative Claim Reserve is insufficient to satisfy such Claims. The Pre-Confirmation Broker shall not be entitled to assert a Professional Fee Claim. Northeast consents to confirmation of the Plan notwithstanding non-payment of the Northeast Administrative Expense Claim. To the extent the Northeast Administrative Expense Claim remains unpaid on the Effective Date, such Claim shall be paid with any proceeds from the Northeast Guaranty Claim.

(b)     **Priority Tax Claims**. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Plan Administrator after consultation with Northeast, either: (i) Cash in an amount equal to such Allowed Priority Tax Claim; or (ii) such other treatment reasonably acceptable to the Plan Administrator after consultation with Northeast and consistent with the provisions of Section 1129(a)(9) of the Bankruptcy Code.

(c)     **U.S. Trustee Fees**. Any unpaid U.S. Trustee Fees shall be paid on the Effective Date, or immediately thereafter.

2.     **Classified Claims**. Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan separately classifies Northeast Secured Claim, the General Unsecured Claims (Northeast Deficiency Claim), and Equity Interests, which shall be afforded the following treatment:

9

a.      **Class 1-Allowed Northeast Secured Claim**. Class 2 consists of the Northeast Secured Claim. In the Event of a Credit Bid Sale, the Allowed Northeast Secured Claim shall be offset against the purchase price of the Northeast Credit Bids. In the event of an Alternative Transaction, the Northeast Secured Claim shall receive a distribution from the proceeds of the sale of the Adams Properties and liquidation of all other collateral pledged to Northeast under the Loan Documents up to the amount of its Allowed Claim. Class 1 is impaired under the Plan. As Plan Proponent, Northeast consents to Class 1 being deemed to vote in favor of the Plan and is not entitled to vote to reject or accept the Plan.

b.      **Class 2-Allowed General Unsecured Claims (Northeast Deficiency Claim).** Class 2 consists of the Allowed Northeast Deficiency Claim and any Allowed General Unsecured Claims arising from the rejection of any Unexpired Lease or Executory Contract. Except to the extent that a holder of a General Unsecured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of the Allowed General Unsecured Claim on account of such Allowed Claim such holder shall receive a distribution from the proceeds from any liquidation of any property of the Debtors and/or the Liquidating Debtors that is not encumbered by Northeast's Liens. As Plan Proponent, Northeast consents to Class 2 being deemed to vote in favor of the Plan and is not entitled to vote to reject or accept the Plan.

c.      **Class 3-Equity Interests**. Class 3 consists of the Equity Interest of the Debtors. Equity Interests in the Debtor shall be unaffected and, upon the Effective Date, shall be maintained by the Equity Interest Holder. Class 3 is not Impaired under the Plan and, pursuant to Section 1126(f) of the Bankruptcy Code, is not entitled to vote to accept or reject the Plan but instead is deemed to accept.

**ARTICLE III**
**Implementation of the Plan**

1.      **Sale of the Adams Properties to Northeast**. Upon Confirmation, the Plan Administrator shall be authorized to consummate the sale of the Adams Properties on behalf of the Estates pursuant to the Northeast Credit Bids and as a condition precedent to the Effective Date, subject to an Alternative Transaction (as defined below). The sale will be directed by Plan Administrator in consultation with the Plan Proponent. Any sale, including pursuant to an Alternative Transaction, shall be free and clear of all Claims, Liens, encumbrances, and interests.

2.      **Alternative Transaction**. In accordance with the terms hereof, a third party may seek to overbid the proposed Northeast Credit Bid (an "Alternative Transaction"). The Plan Administrator is not required to market the Adams Properties. Any bid for a proposed Alternative Transaction must be submitted to the Plan Administrator no later than 30 days after the Confirmation Date (the "Bid Deadline"), subject to the right of the Plan Administrator to extend the Bid Deadline after consultation with the Plan Proponent. To be deemed a qualified bid (a "Qualified Bid"), such bid must not contain any contingencies and contain financial information evidencing access to immediately available funds that will reasonably allow the Plan Administrator to make a determination as to such bidder's financial and other capabilities to

10

consummate the transaction. In the event the Plan Administrator after consultation with the Plan Proponent determines that a competing Qualified Bid is higher or better than any Northeast Credit Bid, the Plan Administrator shall promptly file a motion for approval of the sale of one or both of the Adams Properties, as the case may be, to the competing Qualified Bidder.

**3.     Appointment of Plan Administrator**. The Confirmation Order shall provide for the appointment of the Plan Administrator. The Plan Administrator shall be deemed the Estates' exclusive representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under sections 704 and 1106 of the Bankruptcy Code. The Plan Administrator's rights, duties, and obligations shall be defined by this Plan, the Confirmation Order, and the Plan Administrator Agreement which will be included in a Plan Supplement. Except as otherwise provided for in this Plan or the Confirmation Order, the Plan Administrator shall be responsible for managing, administering, and liquidating all property of the Debtors, the Liquidating Debtors, and the Estates in accordance with this Plan before and after the Effective Date. The Plan Administrator shall serve without a bond and shall be entitled to reasonable compensation on the terms included in the Plan Administrator Agreement. To the extent the Debtors remain in possession, custody, or control of any property of the Debtors' Estates prior to the Effective Date, the Debtors and their representatives shall take direction, consult with, and obtain consent from the Plan Administrator in all respects as to all such property.

**4.     Sources of Consideration for Plan Distributions**. The Plan Administrator shall fund distributions under the Plan with the Administrative Claim Cash Reserve and any proceeds that may be realized from: (i) property of the Estates other than the Adams Properties in the event of a Credit Bid Sale and (ii) property of the Estates, including the Adams Properties, in the event of an Alternative Transaction. Cash payments to be made pursuant to the Plan will be made by the Plan Administrator.

**5.     Vesting of Assets in the Liquidating Debtors**. Except as otherwise provided in the Plan, the Plan Administrator Agreement, or in any agreement, instrument, or other document incorporated into the Plan or the Plan Supplement, on the Effective Date, pursuant to section 1141 of the Bankruptcy Code, all property of the Debtors' Estates, including the Causes of Action, shall vest in the Liquidating Debtors, free and clear of all Claims, Liens, encumbrances and interests, except all Claims, Liens, encumbrances, and interest held by Northeast.

**6.     Termination and Rejection of Real Property Leases and Licenses**. Notwithstanding any contrary provision in an Unexpired Lease or license or other applicable law, on the 31st day following the Confirmation Date, all Unexpired Leases and licenses under which a Debtor leases or licenses any portion of the Adams Properties shall be deemed terminated, unless otherwise agreed to between any such lessee and the Plan Administrator after consultation with the Plan Proponent. Notwithstanding any other provision in the Plan or Confirmation Order, on the Confirmation Date, all unexpired leases and leases under which the Debtors lease any portion of the Adams Properties shall be deemed rejected subject to Section 365(h) of the Bankruptcy Code to the extend applicable.

11

**7.** **Surrender of 13 Adams Street.** If within forty-five (45) days from the Confirmation Date (the "Guarantor Surrender Election Deadline"), (i) Guarantor executes, serves on the Plan Administrator and Northeast, and files with the Bankruptcy Code a Surrender Agreement with respect to the Guarantor Residence and (ii) the Plan Administrator determines (and files a notice with the Bankruptcy Court providing notice of such determination) that the Guarantor has executed the Surrender Agreement by the Guarantor Surrender Election Deadline and fully and timely performed under the Surrender Agreement (the "Guarantor Surrender Requirements"), any money judgment that Northeast seeks in connection with the Northeast Guaranty Claim shall be reduced by 50 percent of the Guarantor's liability under the Guaranty. If within forty-five (45) days from the Confirmation Date (the "Restaurant Surrender Election Deadline"), (i) the Restaurant Tenant executes, serves on the Plan Administrator and Northeast, and files with the Bankruptcy Code a Surrender Agreement with respect to the Restaurant Premises and (ii) the Plan Administrator determines (and files a notice with the Bankruptcy Court providing notice of such determination) that the Restaurant Tenant has executed the Surrender Agreement by the Restaurant Surrender Election Deadline and fully and timely performed under the Surrender Agreement (the "Restaurant Surrender Requirements"), any money judgment that Northeast seeks in connection with the Northeast Guaranty Claim shall be reduced by 50 percent of the Guarantor's liability under the Guaranty. In the event the Restaurant Tenant and Guarantor fully and timely satisfy the Guarantor Surrender Requirements and the Restaurant Surrender Requirements, Northeast shall be deemed to have fully waived and released the Northeast Guaranty Claim against the Guarantor.

**8.** **Adequate Protection Payments.** 13 Adams Street shall be obligated to make the Adequate Protection Payments through the Effective Date of the Plan. Guarantor shall be liable to Northeast for all Adequate Protection Payments that remain unpaid on the Effective Date. The amount of Adequate Protection Payments received by Northeast shall be applied to reduce the amount of the Allowed Northeast Deficiency Claim and not the Northeast Secured Claim.

**9.** **Exemption from Certain Transfer Taxes and Recording Fees**. To the fullest extent permitted by Section 1146(a), any transfer from the Debtors or their Estates to any entity pursuant to, in contemplation of, or in connection with this Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any stamp or similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Unless the Bankruptcy Court orders otherwise, all sales, transfers, and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, this Plan.

**10.**   **Effectuating Documents; Further Transactions**. Prior to, on, and after the Effective Date, (a) the Plan Administrator and (b) the Debtors and the Liquidating Debtors and their member(s), managers, agents, employees, and professionals retained by the Debtors and their Estates acting only with the consent of the Plan Administrator or at its direction, are authorized to execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of this Plan. The Confirmation Order shall, and shall be deemed to, pursuant to both Sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

**11.**   **Conditions to Effective Date**. This Plan shall only be deemed effective upon the following conditions, which may be waived by in the discretion of the Plan Administrator only with the Plan Proponent's consent:

   (a)   Entry of the Confirmation Order;
   (b)   The Confirmation Order becoming a Final Order;
   (c)   Approval of the Plan Administrator Agreement; and
   (d)   The consummation and closing of the sale of the Adams Properties.

## ARTICLE IV
### Provisions Governing Distributions

**1.**   **Disbursements**. All distributions under the Plan shall be made by the Plan Administrator, provided that any distributions made prior to the Effective Date shall only be made with the Plan Proponent's prior written consent.

**2.**   **Rights and Powers of the Plan Administrator**. Except as otherwise provided in this Plan, the Plan Administrator shall be empowered to (i) execute all agreements, instruments and other documents necessary to perform their duties under the Plan (ii) direct that all distributions contemplated by the Plan be made, (iii) prosecute, settle and enforce any objections to Claims or Causes of Action on behalf of the Debtors, Estates, and the Liquidating Debtors and (iv) exercise such other powers as may be deemed necessary and proper to implement the Plan.

**3.**   **Claim Objection Deadline**. Unless otherwise ordered by the Bankruptcy Court, upon the Effective Date only the Plan Administrator shall have standing to file and prosecute any objection to Claims. All such objections shall be filed and served no later than 30 days after the Effective Date of the Plan in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

**4.**   **No Distribution Pending Allowance**. Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any portion of a Disputed Claim until such Disputed Claim becomes an Allowed Claim by stipulation or order of the Bankruptcy Court. Instead, any monies that otherwise would be paid if a Disputed Claim were Allowed shall be held by the Plan Administrator until resolution at which time such withheld Cash shall be paid to the holder of such Allowed Claim.

**5.    Undeliverable Distributions**. If a distribution to the holder of any Allowed Claim is returned or not cashed within 180 days of such distribution, no further distribution shall be made to the holder of such Claim, unless, within such period, the Plan Administrator is provided with the holder's current address. Any undeliverable distribution shall revert to the Debtor/Liquidating Debtor. Debtor/Liquidating Debtor will use reasonable efforts to locate holders of Allowed Claims.

**ARTICLE V**
**Treatment of Executory Contracts and Unexpired Leases**

**1.    Rejection of Non-Assumed Contracts and Leases**. All Executory Contracts and Unexpired Leases of the Debtors that are not otherwise assumed or rejected shall be deemed rejected by the Debtors on the Effective Date in accordance with the provisions and requirements of Sections 365 and 1123, other than (i) those assumed as part of a sale of the Adams Properties; (ii) those that have been previously assumed or rejected pursuant to a Final Order prior to the Effective Date; (iii) those that are the subject of a motion seeking assumption or rejection as of the Effective Date; (iv) those that are to be assumed pursuant to the terms of this Plan; or (v) those that are rejected pursuant to Article III.6 of the Plan.

**2.    Approval of Assumption or Rejection**. The Confirmation Order shall constitute an order of the Bankruptcy Court: (i) approving the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts or Unexpired Leases, as described in this Plan and Plan Supplement, pursuant to Sections 365(a) and 1123(b)(2); (ii) providing that each assumption, assignment, or rejection, as the case may be, is in the best interest of the Debtors, the Estates, and all parties in interest in the Debtors' Chapter 11 cases; and (iii) providing that the requirements for assumption or assumption and assignment of any Executory Contract or Unexpired Lease to be assumed have been satisfied. Unless otherwise indicated or provided in the Plan, all assumptions or rejections of Executory Contracts or Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases subject to compliance with the requirements herein; *provided, however*, that such Claims must be filed with the clerk of the Bankruptcy Court and served upon the Plan Administrator within thirty (30) days of the earlier of the date of such rejection or the Effective Date. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim shall be classified as a Class 2 General Unsecured Claim.

**3.    Insurance Policies**. Notwithstanding anything to the contrary in this Plan, the Confirmation Order, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, all insurance policies pursuant to which the Debtors have any obligations in effect as of the Confirmation Date shall be deemed assumed as Executory Contracts pursuant to this Plan and shall continue in full force and effect thereafter in accordance with their respective terms through at least the Effective Date unless otherwise assumed or rejected by the Plan Administrator.

14

**ARTICLE VII**
**Retention of Jurisdiction**

On and after the Effective Date, the Bankruptcy Court shall retain original jurisdiction over all matters arising in, under, and related to these Chapter 11 cases for, among other things, the following purposes:

(a)    To determine all controversies relating to or concerning the allowance of and/or distribution on account of such Claims or Equity Interests upon objection thereto which may be filed by any party in interest;

(b)    To determine requests for payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees;

(c)    To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C §§ 157 and 1334;

(d)    To determine all disputed, contingent, or unliquidated Claims and all disputed Equity Interests;

(e)    To determine Plan modification requests pursuant to section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Bankruptcy Code;

(f)    To recover all property of the Debtors and their Estates, wherever located;

(g)    To take any action and issue any such order, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary or appropriate to carry out, construe, interpret, enforce, implement, execute, and consummate the Plan;

(h)    To determine any and all pending motions and applications for assumption or rejection of executory contracts and leases and the allowance and classification of any Claims resulting from the rejection of executory contracts and leases;

(i)    To resolve any disputes which may arise concerning the sale of the Adams Properties or satisfaction of Allowed Secured Claims as required under the Plan;

(j)    To determine such other matters as may be provided for in the Confirmation Order or as may be authorized pursuant to the Bankruptcy Code;

(k)    To determine and adjudicate the Northeast Guaranty Claim.

15

(l)      To implement, if necessary, any post-Effective Date sale of any property of the Liquidating Debtors, including all issues and disputes arising therefrom; and

(m)      To enter a final decree closing the Chapter 11 cases.

### ARTICLE VIII
### Discharge of Debts, Injunction and Release

**1.      Discharge of Debts**. Pursuant to Section 1143(d)(3) of the Bankruptcy Code, the Debtors will not receive a discharge because (a) the Plan provides for the liquidation of all or substantially all of the property of the Estates, (b) the Debtors will not engage in business after consummation of the Plan, and (c) the Debtors, not being individuals, would be denied a discharge under Section 727(a) if the case were a case under Chapter 7 of the Bankruptcy Code.

**2.      RELEASE OF NORTHEAST. IN CONSIDERATION FOR THE BENEFITS PROVIDED BY NORTHEAST UNDER THE PLAN, ON AND AFTER THE EFFECTIVE DATE, NORTHEAST AND ITS MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, REPRESENTATIVES AND ASSIGNS SHALL HEREBY BE EXPRESSLY, UNCONDITIONALLY, IRREVOCABLY, GENERALLY, INDIVIDUALLY AND COLLECTIVELY, RELEASED AND ACQUITTED BY THE, DEBTORS AND THEIR ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AGENTS AND REPRESENTATIVES FROM ANY AND ALL DEFENSES, CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE PURCHASE, SALE, OR RESCISSION OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND NORTHEAST, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS, OR THE CHAPTER 11 CASES.**

**3.      Injunction**: As of the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, all Entities shall be permanently, forever and completely stayed restrained, prohibited, barred and enjoined from asserting against the assets and property of the Debtors' Estates and of the Liquidating Debtors any other or further Claims, debts, obligations, rights, suits, judgments, damages, actions, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing as of the Effective Date or thereafter arising, at law, in equity or otherwise relating to the Debtors, their Estates or Liquidating Debtors or any of their assets or property, based upon any act or omission, transaction, agreement, event, or other occurrence taking place or existing on or prior to the Effective Date.

16

**2.** **Plan and Confirmation Order as Release**. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense, in favor of the Debtors, to any Claim or liability released pursuant this Plan.

## ARTICLE IX
### Closing The Case

**1.** **Bankruptcy Fees**. All fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 and any applicable interest pursuant to 31 U.S.C. § 3717, shall be paid by the Liquidating Debtor through the entry of a final decree closing this case, or conversion or dismissal of the Chapter 11 cases, whichever is earlier.

**2.** **Post-Confirmation Reports**. After Confirmation, the Plan Administrator shall file quarterly status reports, and schedule such status conferences as may be necessary until the case is closed.

3. **Closing the Case**. Within 14 days following the full administration of the Estates, the Plan Administrator shall file on notice to the United States trustee, an application, and a proposed order for a final decree pursuant to Bankruptcy Rule 3022.

## ARTICLE VI
### Miscellaneous Provisions

**1.** **Orders in Aid of Consummation**. Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more orders in aid of implementation of the Plan.

**2.** **Compliance with Tax Requirements**. In connection with the Plan, the Debtors/Liquidating Debtors shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

**3.** **Due Authorization by Creditors**. Each and every holder of an Allowed Claim who accepts a distribution provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distribution provided for in the Plan on account of such Claim and that there are no outstanding liens, encumbrances, commitments, agreements, or understandings, express or implied that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such creditor under the Plan.

**4.** **Filing of Additional Documents**. Except as otherwise provided in the Plan, on or before the Effective Date, the Plan Proponent may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including but not limited to the Plan Supplement.

**5.** **Section Headings**. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

17

6.      **Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the provision of Bankruptcy Rule 9006(a) shall apply.

7.      **Successors and Assigns**. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or permitted assign of such entity.

8.      **Notices**. All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)      to Northeast at: Northeast Bank, One Marina Park Dr. Floor 8, Boston, MA 02210, Attn: Christopher Hickey, Managing Director - Director of Asset Management, with a copy to Windels Marx Lane & Mittendorf LLP, 156 West 56th Street New York, NY 10019, 212.237.1000, Attn: Eloy A. Peral, Esq., eperal@windelsmarx.com.

(b)      if to the Plan Administrator on behalf of the Debtors or Liquidating Debtors at the address provided in the Plan Administrator Agreement;

(c)      if to any holder of a Claim at (i) the address set forth on the respective proofs of Claim filed by such holder; (ii) the addresses set forth in any written notices of address changes delivered Bankruptcy Schedules if no proof of Claim is filed and the Debtor has not received a written notice of a change of address; and

(e)      if to any entity that has filed a notice of appearance, at the address(es) set forth on such notice of appearance.

9.      **Governing Law**. The rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and Bankruptcy Rules and the laws of the State of New York, as applicable.

10.     **Other actions**. Nothing contained herein shall prevent the Plan Administrator from taking such action as may be reasonably necessary to carry out this Plan, although such actions may not specifically be provided for within the Plan.

11.     **Severability**. In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

12.     **Post-Confirmation Management.** During the period between Confirmation of this Plan and the Effective Date, the Plan Administrator shall have sole authority to act manage the Debtors and will be compensated pursuant to his agreement with the Plan Proponent.

18

Dated: Boston, Massachusetts
       May 4, 2026                    NORTHEAST BANK


                                     By:    */s/ Christopher Hickey_____*
                                            Christopher Hickey
                                            Managing Director



Dated: New York, New York
       May 4, 2026



                                     WINDELS MARX LANE & MITTENDORF, LLP


                                     By:    */s/ Eloy A. Peral_____ _____*
                                            Eloy A. Peral (eperal@windelsmarx.com)
                                            156 West 56th Street
                                            New York, New York 10019
                                            Tel. (212) 237-1000 / Fax. (212) 262-1215

                                     *Attorneys for Northeast Bank*

**EXHIBIT B**
**(Redline)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:

13 ADAMS STREET LLC,

                    Debtor.
-------------------------------------------------------------x
In re:

N.C. 17-19 ADAMS STREET LLC,

                    Debtor.
-------------------------------------------------------------x

Chapter 11

Case No. 24-23096-shl


Chapter 11

Case No. 24-23097-shl


### NORTHEAST BANK'S MODIFIED PLAN OF LIQUIDATION FOR DEBTORS 13 ADAMS STREET LLC AND N.C. 17-19 ADAMS STREET LLC


**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Telephone: (212) 237-1000
Eloy A. Peral (eperal@windelsmarx.com)

*Counsel for Northeast Bank*


Dated: ~~April 17~~May 4, 2026

1

Secured creditor Northeast Bank ("Northeast") hereby proposes this plan of liquidation under chapter 11 of the Bankruptcy Code for the above-captioned debtors and debtors-in-possession 13 Adams Street LLC (the "13 Adams Debtor") and N.C. 17-19 Adams Street LLC (the "NC Adams Debtor," together with 13 Adams, as "Debtors"). Capitalized terms used in this Plan shall have the respective meanings set forth in Article I below, or as such terms may be defined elsewhere in the Plan. Northeast is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

**Northeast reserves the right to alter, amend or modify this Plan up to and through its substantial consummation.**

### SUMMARY OF PLAN AND FACTUAL BACKGROUND

The Debtors are single asset real estate debtors within the meaning of Section 101(51B) of the Bankruptcy Code that own buildings on adjacent lots in Westchester County, New York. The 13 Adams Debtor owns the real property located at 13 Adams Street, Bedford Hills, New York 10507 (Section 60.14, Block 5, Lot 4) ("13 Adams Street") and the NC Adams Debtor owns the real property located at NC 17-19 Adams Street, Bedford Hills, New York 10507 (Section 60.14, Block 5, Lot 5) ("NC Adams Street," together with 13 Adams Street, the "Adams Properties"). 13 Adams Street has three floors and approximately three units and NC Adams Street has two floors and approximately four units.

The indebtedness due to Northeast under the Loan, which matured on October 24, 2024, is secured by, *inter alia*, the Adams Properties and totaled no less than $2,958,191.76 on the Petition Date. On October 24, 2024, Northeast filed a *Verified Complaint in Foreclosure* (Index No.: 74185/2024) with the Supreme Court of the State of New York, County of Westchester against, *inter alia*, the Debtors and Guarantor seeking, among other relief, a foreclosure sale of the Adams Properties and to recover the indebtedness due under the Loan. The Guarantor, Nuo Camaj, holds 100 percent of the membership interests in the Debtors. The Debtors filed their Chapter 11 petitions on December 17, 2024.

During and after the Broker Listing Period, which expired on July 7, 2025, the Debtors received various bids to acquire one or both of the Adams Properties, including credit bids from Northeast. None of these bids materialized into a written agreement. A significant hurdle to consummating any sale is the uncooperativeness of the Guarantor. The Guarantor resides on the third floor of 13 Adams Street and operates a restaurant, Nino's Restaurant, from the first floor. Many of the offers made were conditioned on new lease agreements with the Guarantor and Nino's Restaurant and/or NC Adams Street being delivered vacant. However, the Guarantor has indicated a refusal to cooperate in any sale. In addition, an inspection by Northeast of the Adams Properties revealed that unauthorized tenants which were previously unknown to Northeast appear to be in possession of portions of both Adams Properties.

In light of the Guarantor's refusal to cooperate with bidders, his patently conflicted interests and the prolonged and unsuccessful marketing process, Northeast proposes this Plan to facilitate an end to the Chapter 11 cases. Under the Plan, a Plan Administrator will be appointed to, *inter alia*, consummate a sale of the Adams Properties to Northeast pursuant to the Northeast Credit Bids subject

2

to the potential for an Alternative Transaction. The Plan offers the Guarantor and Nino's Restaurant an incentive in the form of a reduction of the Northeast Guaranty Claim to surrender their possession of 13 Adams Street premises to the Plan Administrator or to reach a different resolution with the Plan Administrator and Northeast.

Other than the proofs of claim filed by Northeast, there are no filed or scheduled Claims against the Debtors. Thus, only Northeast would be entitled to vote on the Plan under Section 1126(a) of the Bankruptcy Code. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the following Classes and are treated separately: Class 1 – Northeast Secured Claim, Class 2 – General Unsecured Claims (Northeast Deficiency Claim), and Class 3 – Equity Interests. Northeast consents to Class 1 and Class 2 being deemed to vote in favor of the Plan and Class 3 is unimpaired and is not entitled to accept or reject the Plan. As no Classes are entitled to vote on the Plan, no disclosure statement is needed to accompany the Plan. In addition, the Plan can be confirmed on a consensual basis pursuant to Section 1129(a).

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

## ARTICLE I
### Definitions

For the purposes of this Plan the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1. "*13 Adams Street*" shall have the meaning set forth in the Plan Summary and Factual Background.

2. "*17-19 Adams Street*" shall have the meaning set forth in the Plan Summary and Factual Background.

3. "*Adams Properties*" shall have the meaning set forth in the Plan Summary and Factual Background.

4. "*Adequate Protection Payments*" means the monthly payment in the amount of $4,000 due to Northeast by the 13 Adams Debtor under paragraph four of the Cash Collateral Order.

5. "*Administrative Claims Bar Date*" means the date which is thirty (30) days after a notice of the Effective Date is filed on the case dockets.

6. "*Administrative Claim Cash Reserve*" means $20,000.00 in Cash that shall be funded by the Plan Proponent to the extent Northeast acquires the Adams Properties or funded with the proceeds of an Alternative Transaction and allocated and reserved for the Plan

3

Administrator to fund distributions to holders of Administrative Expenses Claims, including Professional Fee Claims.

7. "***Administrative Expense Claim***" means a Claim for the costs and expenses of administering these Chapter 11 cases allowed under Sections 503(b) or 330(a) of the Bankruptcy Code and that are entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including Professional Fee Claims but only to the extent allowed and awarded by the Bankruptcy Court.

8. "***Allowed Claim***" means (1) a Claim timely filed before the applicable bar date and (a) as to which no objection has been filed within the time fixed in the Plan or (b) as to which any objection that is filed (including an objection set forth in this Plan) has been subsequently settled, waived, withdrawn or denied by the Bankruptcy Court, (2) a Claim in the amount listed on the Bankruptcy Schedules and not designated as contingent, unliquidated or disputed, as to which no objection has been filed or (3) a Claim allowed pursuant to an order of the Bankruptcy Court.

9. "***Alternative Transaction***" shall have the meaning set forth in Article III.2 of the Plan.

10. "***Avoidance Actions***" means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

11. "***Bankruptcy Code***" means the United State Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time and applicable to this case.

12. "***Bankruptcy Court***" means the United States Bankruptcy Court for the Southern District of New York or any other court exercising jurisdiction in this case.

13. "***Bankruptcy Rules***" mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, as now in effect or hereinafter amended.

14. "***Broker Listing Period***" means March 13, 2025 through and including July 7, 2025, the term of the Exclusive Right to Sell and Listing Agreements under which the Pre-Confirmation Broker was retained by the Debtors, as modified by the Broker Retention Orders.

15. "***Broker Retention Orders***" means the orders entered by the Bankruptcy Court on March 24, 2025 [ECF No. 31] and April 15, 2025 [ECF No. 42] approving the proposed retention of the Pre-Confirmation Broker, as modified.

16. "***Cash***" means cash or cash equivalent (a) of the Estates or (b) the Liquidating Debtors on hand as of the Effective Date.

17.     "*Cash Collateral Order*" means the *Final Order (I) Authorizing The Use Of Cash Collateral (II) Providing Adequate Protection And (III) Granting Related And Related* entered by the Bankruptcy Court on August 18, 2025 in the case of the 13 Adams Debtor [ECF No 48].

18.     "*Cause of Action*" means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, including, but not limited to (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) any Avoidance Action; (c) any claim against a current or former tenant or licensee of the Adams Properties for unpaid rent; (d) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim; and subject, however, to any releases provided in this Plan, the Confirmation Order, or any other Final Order of the Bankruptcy Court.

19.     "*Claim*" means a right to payment as set forth in Section 101(5) of the Bankruptcy Code.

20.     "*Class*" means a category of substantially similar Allowed Claims.

21.     "*Confirmation*" means approval of this Plan by the Confirmation Order of the Bankruptcy Court following a hearing and notice thereof in accordance with the Bankruptcy Code and Bankruptcy Rules.

22.     "*Confirmation Date*" means the date of entry of the Confirmation Order.

23.     "*Confirmation Hearing Date*" means the date set by the Bankruptcy Court for the hearing on Confirmation of the Plan.

24.     "*Confirmation Order*" means the order of the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code confirming the Plan.

25.     "*Credit Bid Sale*" means a sale of one or both of the Adams Properties to Northeast pursuant to the Northeast Credit Bid.

26.     "*Debtors*" shall have the meaning set forth in the introductory paragraph to the Plan.

27.     "*Disputed Claim*" means: (a) any Claim that is listed in the Debtors' Bankruptcy Schedules as being disputed, contingent or unliquidated with respect to which no Proof of Claim has been timely filed; and (b) any filed Claim with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period fixed by the Bankruptcy Court and such Claim has not become an Allowed Claim.

5

28.      "***Effective Date***" means the date upon which all conditions set forth in Article III.11 are met.

29.      "***Entity***" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

30.      "***Equity Interest***" means direct membership interests in the Debtors.

31.      "***Equity Interest Holder***" means Nuo Camaj, the sole member of each of the Debtors.

32.      "***Estate(s)***" means the estates of the Debtors created under section 541 of the Bankruptcy Code.

33.      "***Executory Contract***" means a contract to which s Debtor is a party and that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

34.      "***Final Order***" means an order of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek *certiorari*, review or rehearing has been waived or (b) the time to appeal or seek *certiorari*, review or rehearing has expired and as to which no appeal or petition for *certiorari*, review or rehearing is pending.

35.      "***Guarantor***" means Nuo Camaj in his capacity as guarantor pursuant to that certain *Guaranty of Payment* dated May 25, 2022 under which he personally guaranteed to Northeast, *inter alia*, the Debtors' obligations to Northeast under the Loan Documents.

36.      "***General Bar Date***" means March 6, 2025, the deadline by which proofs of Claim arising prior to the Petition Date, were required to be filed with the Clerk of the Bankruptcy Court in these Chapter 11 case.

37.      "***General Unsecured Claim***" means a Claim that is not a Secured Claim, Administrative Expense Claim, Priority Claim, or Priority Tax Claim.

38.      "***Guarantor Residence***" means that portion of the third floor of 13 Adams Street in which the Guarantor maintains a residence.

39.      "***Impaired***" means impairment of a class of Claims under Section 1124 of the Bankruptcy Code.

40.      "***Lien***" has the same meaning as set forth in section 101(10) of the Bankruptcy Code. All rules of construction contained in Section 102 of the Bankruptcy Code apply in the construction of the Plan.

41.      "***Liquidating Debtors***" means the Debtors after the Effective Date.

6

42.     "*Loan*" means the loan in the original principal amount of Two Million Four Hundred Thousand Dollars ($2,400,000.00) that Northeast made to the Debtors on or about May 25, 2022.

43.     "*Loan Documents*" means all agreements, documents, and instruments that evidence, memorialize, or otherwise provide security for the Loan as described in the proofs of claim filed against the Debtors on February 7, 2025.

44.     "*Northeast Administrative Expense Claim*" means the post-petition real estate taxes due by the Debtors and satisfied by Northeast which as of December 31, 2025 equaled $16,044.26 for 13 Adams Street and $16,231.18 for NC Adams Street.

45.     "*Northeast Credit Bids*" means the credit bid of Northeast to purchase 13 Adams Street for a purchase price in the amount $1,200,000.00 and to purchase NC Adams Street for a purchase price of $900,000.00, or any other higher purchase price Northeast may offer for either Adams Properties.

46.     "*Northeast Deficiency Claim*" means that portion of the Allowed Northeast Secured Claim which exceeds the value of the assets securing such Allowed Claim.

47.     "*Northeast Guaranty Claim*" means the claim(s) of Northeast against the Guarantor pursuant to that certain *Guaranty of Payment* dated May 25, 2022 under which he personally guaranteed to Northeast, *inter alia*, the Debtors' monetary obligations to Northeast under the Loan Documents.

48.     "*Northeast Secured Claim*" means the Secured Claim held by Northeast.

49.     "*Petition Date*" means December 17, 2024, the date on which each Debtor filed its voluntary Chapter 11 petition.

50.     "*Plan*" means this Chapter 11 plan of liquidation filed by Northeast.

51.     "*Plan Administrator*" means the person or entity appointed to administer the Plan upon Confirmation, as more fully identified in the Plan Administrator Agreement.

52.     "*Plan Administrator Agreement*" means the agreement appointing and governing the Plan Administrator, which will be filed in a Plan Supplement.

53.     "*Plan Proponent*" means Northeast.

54.     "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, whereby the Plan Proponent will disclose the identity of the Plan Administrator, file the Plan Administrator Agreement and Surrender Agreement.

55.     "*Pre-Confirmation Broker*" means Joseph Lukic of Compass Greater NY, LLC whose retention by the Debtors as broker for the Adams Properties was approved in accordance with the Broker Retention Orders.

56.     "*Priority Claim*" means all Claims that are entitled to priority pursuant to Bankruptcy Code Section 507(a) with the exception of Administrative Expense Claims and Priority Tax Claims.

57.     "*Priority Tax Claim*" means all Claims that are entitled to priority pursuant to Bankruptcy Code Sections 502(i) and 507(a)(8).

58.     "*Professional*" shall mean those persons: (a) retained by the Debtors pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy  Code providing for compensation for services rendered prior to the Confirmation Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which  compensation has been Allowed by the Bankruptcy Court pursuant to sections 503(b)(2), (4) or 506(c) of the Bankruptcy Code.

59.     "*Professional Fee Claims*" means all Claims for fees and expenses (including transaction and success fees) incurred by a Professional on or after the Petition Date and before or on the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

60.     "*Pro Rata*" means with respect to a Class member, in the same proportion as the amount of such member's Allowed Claim over the total Allowed Claims in such Class.

61.     "*Restaurant Tenant*" means Nino's Restaurant of Bedford, Inc. and/or any other Entity that operates the restaurant doing business as "Nino's Restaurant" at 13 Adams Street.

62.     "*Restaurant Premises*" means the portion of 1st floor of 13 Adams Street where the Restaurant Tenant is located.

63.     "*Schedules*" means the schedules of assets and liabilities, lists and statements of financial affairs, together with all amendments thereto, filed by the Debtor pursuant to Bankruptcy Rule 1007.

64.     "*Secured Claim*" means a Claim secured by a Lien (including a judgment lien, mortgage or security interest) on property of the Debtors' Estates to the extent of the value of the property of the Debtors' Estates securing such Claim, and any valid and enforceable right of setoff under Section 506 and 553 of the Bankruptcy Code, respectively.

65.     "*Surrender Agreement*" means an agreement between the Plan Administrator on behalf of the Debtors and a tenant or occupant of the Adams Properties wherein the tenant or occupant agrees to, *inter alia*, surrender and deliver vacant occupancy of the premises to the Debtors, (ii) leave the premises in broom clean condition, and (iii) return all keys to the Debtors. A copy of the Surrender Agreement is to be included in a Plan Supplement.

8

66.     "*Unexpired Lease*" means a lease to which ~~s~~a Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

67.     "*U.S. Trustee Fees*" means all fees payable pursuant to 28 U.S.C. § 1930, and statutory interest thereon.

**ARTICLE II**
**Classification And Treatment of Claims and Interests**

1.      **Unclassified Claims and U.S. Trustee Fees**. Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims or Priority Tax Claims, or U.S. Trustee Fees, which shall be afforded the following treatment:

(a)     **Administrative Claims and Professional Fee Claims**. The Plan Proponent is unaware of any Administrative Expenses Claims existing as of the Confirmation Date, except the Northeast Administrative Expense Claim and Professional Fee Claims. All final requests for payment of Administrative Expense Claims, including Professional Fee Claims, must be filed no later than the Administrative Claims Bar Date (which is 30 days after entry of the Effective Date). Except to the extent that a holder of an Allowed Administrative Expense Claim, including holders of Professional Fee Claims, agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Claim, a distribution in Cash from the Administrative Claim Cash Reserve; *provided, however*, that Guarantor shall be liable for the payment of all Allowed Administrative Expenses Claims to the extent the Administrative Claim Reserve is insufficient to satisfy such Claims. The Pre-Confirmation Broker shall not be entitled to assert a Professional Fee Claim. Northeast consents to confirmation of the Plan notwithstanding non-payment of the Northeast Administrative Expense Claim. To the extent the Northeast Administrative Expense Claim remains unpaid on the Effective Date, such Claim shall be paid with any proceeds from the Northeast Guaranty Claim.

(b)     **Priority Tax Claims**. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Plan Administrator after consultation with Northeast, either: (i) Cash in an amount equal to such Allowed Priority Tax Claim; or (ii) such other treatment reasonably acceptable to the Plan Administrator after consultation with Northeast and consistent with the provisions of Section 1129(a)(9) of the Bankruptcy Code.

(c)     **U.S. Trustee Fees**. Any unpaid U.S. Trustee Fees shall be paid on the Effective Date, or immediately thereafter.

2.      **Classified Claims**. Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan separately classifies Northeast Secured Claim, the General Unsecured Claims (Northeast Deficiency Claim), and Equity Interests, which shall be afforded the following treatment:

9

a.      **Class 1-Allowed Northeast Secured Claim**. Class 2 consists of the Northeast Secured Claim. In the Event of a Credit Bid Sale, the Allowed Northeast Secured Claim shall be offset against the purchase price of the Northeast Credit Bids. In the event of an Alternative Transaction, the Northeast Secured Claim shall receive a distribution from the proceeds of the sale of the Adams Properties and liquidation of all other collateral pledged to Northeast under the Loan Documents up to the amount of its Allowed Claim. Class 1 is impaired under the Plan. As Plan Proponent, Northeast consents to Class 21 being deemed to vote in favor of the Plan and is not entitled to vote to reject or accept the Plan.

b.      **Class 2-Allowed General Unsecured Claims (Northeast Deficiency Claim).** Class 32 consists of the Allowed Northeast Deficiency Claim and any Allowed General Unsecured Claims arising from the rejection of any Unexpired Lease or Executory Contract. Except to the extent that a holder of a General Unsecured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of the Allowed General Unsecured Claim on account of such Allowed Claim such holder shall receive a distribution from the proceeds from any liquidation of any property of the Debtors and/or the Liquidating Debtors that is not encumbered by Northeast's Liens. As Plan Proponent, Northeast consents to Class 2 being deemed to vote in favor of the Plan and is not entitled to vote to reject or accept the Plan.

c.      **Class 3-Equity Interests**. Class 3 consists of the Equity Interest of the Debtors. Equity Interests in the Debtor shall be unaffected and, upon the Effective Date, shall be maintained by the Equity Interest Holder. Class 3 is not Impaired under the Plan and, pursuant to Section 1126(f) of the Bankruptcy Code, is not entitled to vote to accept or reject the Plan but instead is deemed to accept.

## ARTICLE III
### Implementation of the Plan

1.      **Sale of the Adams Properties to Northeast**. Upon Confirmation, the Plan Administrator shall be authorized to consummate the sale of the Adams Properties on behalf of the Estates pursuant to the Northeast Credit Bids and as a condition precedent to the Effective Date, subject to an Alternative Transaction (as defined below). The sale will be directed by Plan Administrator in consultation with the Plan Proponent. Any sale, including pursuant to an Alternative Transaction, shall be free and clear of all Claims, Liens, encumbrances, and interests.

2.      **Alternative Transaction**. In accordance with the terms hereof, a third party may seek to overbid the proposed Northeast Credit Bid (an "Alternative Transaction"). The Plan Administrator is not required to market the Adams Properties. Any bid for a proposed Alternative Transaction must be submitted to the Plan Administrator no later than 30 days after the Confirmation Date (the "Bid Deadline"), subject to the right of the Plan Administrator to extend the Bid Deadline after consultation with the Plan Proponent. To be deemed a qualified bid (a "Qualified Bid"), such bid must not contain any contingencies and contain financial information evidencing access to immediately available funds that will reasonably allow the Plan Administrator to make a determination as to such bidder's financial and other capabilities to

10

consummate the transaction. In the event the Plan Administrator after consultation with the Plan Proponent determines that a competing Qualified Bid is higher or better than any Northeast Credit Bid, the Plan Administrator shall promptly file a motion for approval of the sale of one or both of the Adams Properties, as the case may be, to the competing Qualified Bidder.

**3.    Appointment of Plan Administrator**. The Confirmation Order shall provide for the appointment of the Plan Administrator. The Plan Administrator shall be deemed the Estates' exclusive representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under sections 704 and 1106 of the Bankruptcy Code. The Plan Administrator's rights, duties, and obligations shall be defined by this Plan, the Confirmation Order, and the Plan Administrator Agreement which will be included in a Plan Supplement. Except as otherwise provided for in this Plan or the Confirmation Order, the Plan Administrator shall be responsible for managing, administering, and liquidating all property of the Debtors', the Liquidating Debtors, and the Estates in accordance with this Plan before and after the Effective Date. The Plan Administrator shall serve without a bond and shall be entitled to reasonable compensation on the terms included in the Plan Administrator Agreement. To the extent the Debtors remain in possession, custody, or control of any property of the Debtors' ~~Estate~~Estates prior to the Effective Date, the Debtors and their representatives shall take direction, consult with, and obtain consent from the Plan Administrator in all respects as to all such property.

**4.    Sources of Consideration for Plan Distributions**. The Plan Administrator shall fund distributions under the Plan with the Administrative Claim Cash Reserve and any proceeds that may be realized from: (i) property of the Estates other than the Adams Properties in the event of a Credit Bid Sale and (ii) property of the Estates, including the Adams Properties, in the event of ~~the Adams Properties~~an Alternative Transaction. Cash payments to be made pursuant to the Plan will be made by the Plan Administrator.

**5.    Vesting of Assets in the Liquidating Debtors**. Except as otherwise provided in the Plan, the Plan Administrator Agreement, or in any agreement, instrument, or other document incorporated into the Plan or the Plan Supplement, on the Effective Date, pursuant to section 1141 of the Bankruptcy Code, all property of the Debtors' Estates, including the Causes of Action, shall vest in the Liquidating Debtors, free and clear of all Claims, Liens, encumbrances and interests, except all Claims, Liens, encumbrances, and interest held by Northeast.

**6.    Termination and Rejection of Real Property Leases and Licenses**. ~~On the 31th~~Notwithstanding any contrary provision in an Unexpired Lease or license or other applicable law, on the 31st day following the Confirmation Date, all Unexpired Leases and licenses under which a Debtor leases or licenses any portion of the Adams Properties shall be deemed terminated, unless otherwise agreed to between any such lessee and the Plan Administrator after consultation with the Plan Proponent. Notwithstanding any other provision in the Plan or Confirmation Order, on the Confirmation Date, all unexpired leases and leases under which the Debtors lease any portion of the Adams Properties shall be deemed rejected subject to Section 365(h) of the Bankruptcy Code to the extend applicable.

11

**7.** **Surrender of 13 Adams Street.** If within forty-five (45) days from the Confirmation Date (the "Guarantor Surrender Election Deadline"), (i) Guarantor executes, serves on the Plan Administrator and Northeast, and files with the Bankruptcy Code a Surrender Agreement with respect to the Guarantor Residence and (ii) the Plan Administrator determines (and files a notice with the Bankruptcy Court providing notice of such determination) that the Guarantor has executed the Surrender Agreement by the Guarantor Surrender Election Deadline and fully and timely performed under the Surrender Agreement (the "Guarantor Surrender Requirements"), any money judgment that Northeast seeks in connection with the Northeast Guaranty Claim shall be reduced by 50 percent of the Guarantor's liability under the Guaranty. If within forty-five (45) days from the Confirmation Date (the "Restaurant Surrender Election Deadline"), (i) the Restaurant Tenant executes, serves on the Plan Administrator and Northeast, and files with the Bankruptcy Code a Surrender Agreement with respect to the Restaurant Premises and (ii) the Plan Administrator determines (and files a notice with the Bankruptcy Court providing notice of such determination) that the Restaurant Tenant has executed the Surrender Agreement by the Restaurant Surrender Election Deadline and fully and timely performed under the Surrender Agreement (the "Restaurant Surrender Requirements"), any money judgment that Northeast seeks in connection with the Northeast Guaranty Claim shall be reduced by 50 percent of the Guarantor's liability under the Guaranty. In the event the Restaurant Tenant and Guarantor fully and timely satisfy the Guarantor Surrender Requirements and the Restaurant Surrender Requirements, Northeast shall be deemed to have fully waived and released the Northeast Guaranty Claim against the Guarantor.

**8.** **Adequate Protection Payments.** 13 Adams Street shall be obligated to make the Adequate Protection Payments through the Effective Date of the Plan. Guarantor shall be liable to Northeast for all Adequate Protection Payments that remain unpaid on the Effective Date. The amount of Adequate Protection Payments received by Northeast shall be applied to reduce the amount of the Allowed Northeast Deficiency Claim and not the Northeast Secured Claim.

**9.** **Exemption from Certain Transfer Taxes and Recording Fees**. To the fullest extent permitted by Section 1146(a), any transfer from the Debtors or their Estates to any entity pursuant to, in contemplation of, or in connection with this Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any stamp or similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Unless the Bankruptcy Court orders otherwise, all sales, transfers, and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, this Plan.

**10.     Effectuating Documents; Further Transactions**. Prior to, on, and after the Effective Date, (a) the Plan Administrator and (b) the Debtors and the Liquidating Debtors and their member(s), managers, agents, employees, and professionals retained by the Debtors and their Estates acting only with the consent of the Plan Administrator or at its direction, are authorized to execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of this Plan. The Confirmation Order shall, and shall be deemed to, pursuant to both Sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

**11.     Conditions to Effective Date**. This Plan shall only be deemed effective upon the following conditions, which may be waived by in the discretion of the Plan Administrator only with the Plan Proponent's consent:

(a)     Entry of the Confirmation Order;
(b)     The Confirmation Order becoming a Final Order;
(c)     Approval of the Plan Administrator Agreement; and
(d)     The consummation and closing of the sale of the Adams Properties.

## ARTICLE IV
## Provisions Governing Distributions

**1.     Disbursements**. All distributions under the Plan shall be made by the Plan Administrator, provided that any distributions made prior to the Effective Date shall only be made with the Plan Proponent's prior written consent.

**2.     Rights and Powers of the Plan Administrator**. Except as otherwise provided in this Plan, the Plan Administrator shall be empowered to (i) execute all agreements, instruments and other documents necessary to perform their duties under the Plan (ii) direct that all distributions contemplated by the Plan be made, (iii) prosecute, settle and enforce any objections to Claims or Causes of Action on behalf of the Debtors, Estates, and the Liquidating Debtors and (iv) exercise such other powers as may be deemed necessary and proper to implement the Plan.

**3.     Claim Objection Deadline**. Unless otherwise ordered by the Bankruptcy Court, upon the Effective Date only the Plan Administrator shall have standing to file and prosecute any objection to Claims. All such objections shall be filed and served no later than 30 days after the Effective Date of the Plan in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

**4.     No Distribution Pending Allowance**. Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any portion of a Disputed Claim until such Disputed Claim becomes an Allowed Claim by stipulation or order of the Bankruptcy Court. Instead, any monies that otherwise would be paid if a Disputed Claim were Allowed shall be held by the Plan Administrator until resolution at which time such withheld Cash shall be paid to the holder of such Allowed Claim.

13

**5.     Undeliverable Distributions**. If a distribution to the holder of any Allowed Claim is returned or not cashed within 180 days of such distribution, no further distribution shall be made to the holder of such Claim, unless, within such period, the Plan Administrator is provided with the holder's current address. Any undeliverable distribution shall revert to the Debtor/Liquidating Debtor. Debtor/Liquidating Debtor will use reasonable efforts to locate holders of Allowed Claims.

## ARTICLE V
## Treatment of Executory Contracts and Unexpired Leases

**1.     Rejection of Non-Assumed Contracts and Leases**. All Executory Contracts and Unexpired Leases of the Debtors that are not otherwise assumed or rejected shall be deemed rejected by the Debtors on the Effective Date in accordance with the provisions and requirements of Sections 365 and 1123, other than (i) those assumed as part of a sale of the Adams Properties; (ii) those that have been previously assumed or rejected pursuant to a Final Order prior to the Effective Date; (iii) those that are the subject of a motion seeking assumption or rejection as of the Effective Date; (iv) those that are to be assumed pursuant to the terms of this Plan; or (v) those that are rejected pursuant to Article III.6 of the Plan.

**2.     Approval of Assumption or Rejection**. The Confirmation Order shall constitute an order of the Bankruptcy Court: (i) approving the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts or Unexpired Leases, as described in this Plan and Plan Supplement, pursuant to Sections 365(a) and 1123(b)(2); (ii) providing that each assumption, assignment, or rejection, as the case may be, is in the best interest of the Debtors, the Estates, and all parties in interest in the Debtors' Chapter 11 cases; and (iii) providing that the requirements for assumption or assumption and assignment of any Executory Contract or Unexpired Lease to be assumed have been satisfied. Unless otherwise indicated or provided in the Plan, all assumptions or rejections of Executory Contracts or Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases subject to compliance with the requirements herein; *provided, however*, that such Claims must be filed with the clerk of the Bankruptcy Court and served upon the Plan Administrator within thirty (30) days of the earlier of the date of such rejection or the Effective Date. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim shall be classified as a Class 2 General Unsecured Claim.

**3.     Insurance Policies**. Notwithstanding anything to the contrary in this Plan, the Confirmation Order, the Plan Supplement, any bar date notice or claim objection, and any other document related to any of the foregoing, all insurance policies pursuant to which the Debtors have any obligations in effect as of the Confirmation Date shall be deemed assumed as Executory Contracts pursuant to this Plan and shall continue in full force and effect thereafter in accordance with their respective terms through at least the Effective Date unless otherwise assumed or rejected by the Plan Administrator.

14

## ARTICLE VII
### Retention of Jurisdiction

On and after the Effective Date, the Bankruptcy Court shall retain ~~exclusive~~original jurisdiction over all matters arising in, under, and related to these Chapter 11 cases for, among other things, the following purposes:

(a)    To determine all controversies relating to or concerning the allowance of and/or distribution on account of such Claims or Equity Interests upon objection thereto which may be filed by any party in interest;

(b)    To determine requests for payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees;

(c)    To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C §§ 157 and 1334;

(d)    To determine all disputed, contingent, or unliquidated Claims and all disputed Equity Interests;

(e)    To determine Plan modification requests pursuant to section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Bankruptcy Code;

(f)    To recover all property of the Debtors and their Estates, wherever located;

(g)    To take any action and issue any such order, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary or appropriate to carry out, construe, interpret, enforce, implement, execute, and consummate the Plan;

(h)    To determine any and all pending motions and applications for assumption or rejection of executory contracts and leases and the allowance and classification of any Claims resulting from the rejection of executory contracts and leases;

(i)    To resolve any disputes which may arise concerning the sale of the Adams Properties or satisfaction of Allowed Secured Claims as required under the Plan;

(j)    To determine such other matters as may be provided for in the Confirmation Order or as may be authorized pursuant to the Bankruptcy Code;

(k)    To determine and adjudicate the Northeast Guaranty Claim.

15

(l)       To implement, if necessary, any post-Effective Date sale of any property of the Liquidating Debtors, including all issues and disputes arising therefrom; and

(m)      To enter a final decree closing the Chapter 11 cases.

### ARTICLE VIII
### Discharge of Debts, Injunction and Release

**1.      Discharge of Debts**. Pursuant to Section 1143(d)(3) of the Bankruptcy Code, the Debtors will not receive a discharge because (a) the Plan provides for the liquidation of all or substantially all of the property of the Estates, (b) the Debtors will not engage in business after consummation of the Plan, and (c) the Debtors, not being individuals, would be denied a discharge under Section 727(a) if the case were a case under Chapter 7 of the Bankruptcy Code.

~~2. Release of Northeast. Pursuant to section 1123(b) of the Bankruptcy Code, and in consideration for the benefits provided by Northeast under the Plan, on and after the Effective Date, Northeast and its members, officers, directors, employees, attorneys, advisors, agents, representatives, and assigns shall hereby be expressly, unconditionally, irrevocably, generally, individually and collectively, released and acquitted by the, Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all causes of action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of the Debtors, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Equity Interest in, the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and Northeast, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, or the Chapter 11 cases.~~

**2.      RELEASE OF NORTHEAST. IN CONSIDERATION FOR THE BENEFITS PROVIDED BY NORTHEAST UNDER THE PLAN, ON AND AFTER THE EFFECTIVE DATE, NORTHEAST AND ITS MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, REPRESENTATIVES AND ASSIGNS SHALL HEREBY BE EXPRESSLY,      UNCONDITIONALLY,      IRREVOCABLY,      GENERALLY, INDIVIDUALLY AND COLLECTIVELY, RELEASED AND ACQUITTED BY THE, DEBTORS AND THEIR ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND   THEIR   RESPECTIVE   SUCCESSORS,   ASSIGNS,   AGENTS   AND REPRESENTATIVES FROM ANY AND ALL DEFENSES, CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION   THEREOF),   THE   PURCHASE,   SALE,   OR   RESCISSION   OF   ANY SECURITY   OF   THE   DEBTORS,   THE   SUBJECT   MATTER   OF,   OR   THE TRANSACTIONS   OR   EVENTS   GIVING   RISE   TO,   ANY   CLAIM   OR   EQUITY**

**INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS AND NORTHEAST, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, INTERCOMPANY TRANSACTIONS, OR THE CHAPTER 11 CASES.**

**3.**    **Injunction**: As of the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, all Entities shall be permanently, forever and completely stayed restrained, prohibited, barred and enjoined from asserting against the assets and property of the Debtors or' Estates and of the Liquidating Debtors or their assets, property and Estates, any other or further Claims, debts, obligations, rights, suits, judgments, damages, actions, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing as of the Effective Date or thereafter arising, at law, in equity or otherwise relating to the Debtors, their Estates or Liquidating Debtors or any of their assets, or property and Estates, based upon any act or omission, transaction, agreement, event, or other occurrence taking place or existing on or prior to the Effective Date.

**2.**    **Plan and Confirmation Order as Release**. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense, in favor of the Debtors, to any Claim or liability released pursuant this Plan.

## ARTICLE IX
## Closing The Case

**1.**    **Bankruptcy Fees**. All fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 and any applicable interest pursuant to 31 U.S.C. § 3717, shall be paid by the Liquidating Debtor through the entry of a final decree closing this case, or conversion or dismissal of the Chapter 11 cases, whichever is earlier.

**2.**    **Post-Confirmation Reports**. After Confirmation, the Plan Administrator shall file quarterly status reports, and schedule such status conferences as may be necessary until the case is closed.

3.    **Closing the Case**. Within 14 days following the full administration of the Estates, the Plan Administrator shall file on notice to the United States trustee, an application, and a proposed order for a final decree pursuant to Bankruptcy Rule 3022.

## ARTICLE VI
## Miscellaneous Provisions

**1.**    **Orders in Aid of Consummation**. Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more orders in aid of implementation of the Plan.

17

**2.** **Compliance with Tax Requirements**. In connection with the Plan, the Debtors/Liquidating Debtors shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

**3.** **Due Authorization by Creditors**. Each and every holder of an Allowed Claim who accepts a distribution provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distribution provided for in the Plan on account of such Claim and that there are no outstanding liens, encumbrances, commitments, agreements, or understandings, express or implied that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such creditor under the Plan.

**4.** **Filing of Additional Documents**. Except as otherwise provided in the Plan, on or before the Effective Date, the Plan Proponent may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including but not limited to the Plan Supplement.

**5.** **Section Headings**. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**6.** **Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the provision of Bankruptcy Rule 9006(a) shall apply.

**7.** **Successors and Assigns**. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or permitted assign of such entity.

**8.** **Notices**. All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a) to Northeast at: Northeast Bank, One Marina Park Dr. Floor 8, Boston, MA 02210, Attn: Christopher Hickey, Managing Director - Director of Asset Management, with a copy to Windels Marx Lane & Mittendorf LLP, 156 West 56th Street New York, NY 10019, 212.237.1000, Attn: Eloy A. Peral, Esq., eperal@windelsmarx.com.

~~(b) to the Debtors/Liquidating Debtors at: Anne Penachio, Penachio Malara LP, 245 Main Street, Suite 450, White Plains, NY 10601, (914) 946-2889, anne@pmlawllp.com for the 13 Adams Debtor and James J. Rufo, Esq., The Law Office of James J. Rufo, 222 Bloomingdale Rd., Suite 202, White Plains, NY 10605, (914) 600-7161, jrufo@jamesrufolaw.com for the NC Adams Debtor.~~

(b) ~~(c)~~ if to the Plan Administrator on behalf of the Debtors or Liquidating Debtors at the address provided in the Plan Administrator Agreement;

(c) ~~(d)~~ if to any holder of a Claim at (i) the address set forth on the respective proofs of Claim filed by such holder; (ii) the addresses set forth in any written notices of address

18

changes delivered Bankruptcy Schedules if no proof of Claim is filed and the Debtor has not received a written notice of a change of address; and

(e) if to any entity that has filed a notice of appearance, at the address(es) set forth on such notice of appearance.

**9. Governing Law**. The rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and Bankruptcy Rules and the laws of the State of New York, as applicable.

**10. Other actions**. Nothing contained herein shall prevent the Plan Administrator from taking such action as may be reasonably necessary to carry out this Plan, although such actions may not specifically be provided for within the Plan.

**11. Severability**. In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

**12. Post-Confirmation Management.** During the period between Confirmation of this Plan and the Effective Date, the Plan Administrator shall have sole authority to act manage the Debtors and will be compensated pursuant to his agreement with the Plan Proponent.

Dated: Boston, Massachusetts
~~April 17~~May 4, 2026          NORTHEAST BANK

By:     */s/ Christopher Hickey*_____
          Christopher Hickey
          Managing Director

Dated: New York, New York
~~April 17~~May 4, 2026

WINDELS MARX LANE & MITTENDORF, LLP

By:     */s/ Eloy A. Peral*_____
          Eloy A. Peral (eperal@windelsmarx.com)
          156 West 56th Street
          New York, New York 10019

19

Tel. (212) 237-1000 / Fax. (212) 262-1215

*Attorneys for Northeast Bank*

20

| | |
|---|---|
| **Summary report:** <br> **Litera Compare for Word 11.10.1.2 Document comparison done on** <br> **5/4/2026 12:46:22 PM** | |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4900-0238-9407/3/Adams Plan of Liquidation.docx | |
| **Modified DMS:** nd://4909-0565-8020/2/Adams - Modified Plan of Liquidation.docx | |
| **Changes:** | |
| Add | 22 |
| Delete | 25 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 47 |